## JULIAN vs. LACEY.

1. In forcible entry and detainer, it is competent for the plaintiff, in establishing his possession, to prove by his agents, and by letters bearing his name, received by them, in the usual course of mail, their possession of the premises. as his agents.

## APPEAL from Hannibal court of Common Pleas.

RICHMOND, HARRISON & HAWKINS, for appellant.

1. This cause being tried originally before a justice of the peace in Mason township, Marion county, no appeal could be taken to the circuit court. See the act establishing the Hannibal court of common pleas, affirmed March 27, 1845, local and private acts, 1845, p. 66; also, amended acts of 1847, session acts p. 25.

2. No appeal was taken, in the time or manner required by law, to the Hannibal court of common pleas. The pretended appeal should have been dismissed. Adams vs. Wilson, &c., 10 Mo. R., 341-2.

The mistake in taking the appeal to the wrong court cannot assist the party who made the mistake.

3. The testimony of Anderson tended plainly to show the manner in which Fife took possession of the premises, and that in so doing he acted for Julian.

It shows also that Julian was in possession of the property less than three years before Lacey's entry, and so far is certainly competent, not only to show the plaintiff's possession, but in connexion with Hayden's testimony to ꞇmake out finally the plaintiff's case without Fife's deposition. Warren vs. Ritter & Ritter. 11 Mo. R., 354-5-7. Anderson's testimony as to his conveyance to Julian was not objected to when given; it could not afterwards be excluded. The instructions excluding Anderson's testimony was illegal.

4. 1, 2 and 3 instructions given on behalf of defendant are calculated to mislead the jury, and are in direct conflict with the principles settled in the case of Warren vs. Ritter, above alluded to.

5. Fife's agency is fully shown by the letters which make part of his deposition, and he is a competent witness to prove the hand-writing of Julian, as he has corresponded with him, and several letters on business have passed between them. Fife's knowledge of Julian's handwriting, acquired by inspection of the last letter, is sufficient to enable him to testify as to the hand-writing of the two other letters. Julian's identity, as the writer, is sufficiently proved by all the circumstances of Anderson. Greenleaf on Ev. 1 vol., secs. 576, 577, and citations. So the 5 and 6 instructions given to the jury were erroneous.

7. It was immaterial whether Julian had possession wholly for his own use, or partly for the use of others. If he had the legal possession in his own right, this was sufficient to make the entry of Lacey a disseizin as to him. It could not avail Lacey that some obligations of trust existed between Julian and a stranger.

GLOVER, for appellees.

The defendant in error insists:

The court committed no error and the judgment must be affirmed. It is necessary that

Julian vs. Lacey.

the plaintiff should show himself to have been in actual posession to maintain this action. But here was no evidence of any possession even in the plaintiff. 7 Mo. R., 50; 1b. 113; 1b. 290; 6 Mo. R., 346; 8 Mo. R., 277; 11 Mo R., 600   A constructive possession has not been regarded as sufficient in law to support the action, 6 J. J. Marshall, 346.

BIRCH, J., delivered the opinion of the court.

This suit was originally instituted before a justice of the peace, where the plaintiff had judgment. As to the steps subsequently adopted, whereby it got into the court of common pleas, and as to the various motions which were there made to dismiss it, it will perhaps best suffice, in the divided opinion of the members of this court, to state that as a majority of the bench are disinclined to technically question the jurisdiction which was assumed, no separate opinions upon that point will be here presented.

The action was founded upon the third section of the statute concerning forcible entry and detainer, and was instituted to recover the possession of a house and lot in the city of Hannibal. The bill of exceptions shows that the plaintiff first introduced Thomas L. Anderson, Esquire, who testified that as attorney for Julian and others, he had obtained a judgment and execution in their favor, sold under it the property in question, purchased it himself, and after conveying it to Julian, took possession of it for him, by renting it out for his benefit and that of other clients. That he received rent from some of the tenants, which he applied in part to the payment of costs and fees; and that some two or three years previous to the time he was testifying, (and of course before the disseizin and detainer complained of) he surrendered his agency of said property to Matthew Fife, of Hannibal, who shewed, or told him he had received a letter from Julian, in which he had been requested to act as his agent for the property in controversy. Mr. Anderson further and lastly testified, that he had exercised *his* agency over the property in question through a Mr. Haines, of Hannibal.

The plaintiff then offered to read a deposition from Fife, the person to whom Anderson testified, as above, that he had surrendered his agency in the property; and as Fife's testimony, relative to *his* agency or action concerning the property in suit was excluded by the court, it becomes necessary in order to a proper understanding of the grounds upon which we place our disconcurrence with the judge below, to state somewhat in detail the authority upon which he assumed to act as the agent of the plaintiff.

By the testimony of Anderson, which was unobjected to at the time

it was given, and which would seem, moreover, to be entirely compe-
tent for the purpose of establishing such a mere possession as he claims
to have held for Julian and others, it is seen that he transferred that
possession or agency at least at the instance of Julian, to the defendant
Fife. Fife, thereby, if really acting under Julian's authority, became
invested, *eo instanti*, and of course in regular continuation, with all the
authority which up to that period had been possessed by Anderson, and
that seems to have been sufficiently possessory to enable him to collect
the rents and apply them to the benefit of the plaintiff and other clients.
The letter, moreover, which the deposition establishes to have passed
between himself and the plaintiff, sufficiently recognize or confirm the
previous possession or agency of Anderson; and these letters, sworn
to have been received in the usual couse of the business of such an
agency, and bearing the name of Julian, a person whose identity, (as
we have seen) was previously sufficiently established, were unquestion-
ably competent (without the proof of the hand-writing) to put the de-
fendant to a rebuttal of the prima facie authority they conferred upon
the new agent.

Whether any understanding existed between Julian and the other
clients of Anderson, as to their respective equities or interest in the
property, the possession of which is here sued for, it is deemed unne-
cessary to here enquire, the sole question being, *as it seems to us*,
whether the testimony of Anderson established in Julian, through him-
self, the possession of the property in question, and whether this agency
was surrendered to one who was really the succeeding agent of the
plaintiff. These positions we think it was competent for the plaintiff to
make out in the manner he attempted, namely, through the testimony of
Anderson and Fife, and the letters purporting to be written by Julian,
the plaintiff. The refusal of the court to recognize such testimony being
the substance of all the errors complained of, it is deemed unnecessary
to remark upon the instructions which were given and relused, as they
will of course be conformed in the next trial to the opinion herein ren-
dered respecting the testimony.

The judgment is therefore reversed and the cause remanded.